RENDERED: JULY 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2026-CA-0034-ME

TERESA JEWEL WHITTEN                                    APPELLANT


v.
APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JENNIFER HENDRICKS, JUDGE
CASE NO. 19-D-00031-002


KRISTOPHER BRIAN
EVERITT                                                APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: Teresa Jewel Whitten appeals *pro se* from a domestic violence

order ("DVO") entered by the Daviess Circuit Court, barring contact with

Kristopher Brian Everitt. Upon careful review, we affirm.

As a preliminary matter, we address the serious deficiencies in

Whitten's appellant's brief. Although litigants acting *pro se* are not held to the

same standard as those represented by legal counsel, they are not exempt from following the Kentucky Rules of Appellate Procedure ("RAP"). *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). RAP 32(A)(4) specifies that an appellant's argument must have "ample . . . citations of authority pertinent to each issue of law[.]" It is apparent to this Court that Whitten used Generative AI to write her brief because it contains citations to two cases which, after an exhaustive search, do not appear to exist and were "hallucinated": *Lane v. Lane*, 969 S.W.2d 886 (Ky. App. 1998) and *Allen v. Commonwealth*, 734 S.W.2d 249 (Ky. 1987). The brief also contains citations to other opinions that do not stand for the propositions for which they are cited, as will be discussed more fully below. "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)]; or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). In this case, we choose to review Whitten's arguments but caution her that any future non-compliant filings with this Court, or any other level of court, may be met with severe penalties.

## FACTUAL AND PROCEDURAL BACKGROUND

Whitten and Everitt were in a dating relationship for approximately four years; they lived together and had one child. Although they were separated,

Whitten had been staying at Everitt's residence for about two months while she looked for a place of her own. On November 11, 2025, Everitt picked up their daughter from school. On the way home, he told her that he and Whitten were not getting along, and her mother would have to move out on her own after the holidays. He also told their daughter her mother would have to go to a homeless shelter. When they got home, the daughter asked Whitten where she was going to live, and Whitten became very angry. Whitten punched and kicked Everitt, and threatened to slit his throat while he slept. She spat on him as he and their daughter left. The next morning, he petitioned for an emergency protective order ("EPO"), which was granted.

The family court held a DVO hearing on December 11, 2025. Everitt and Whitten both appeared without counsel. At the outset of the hearing, the court explained to Whitten that, if she chose, she could stipulate to an agreement with Everitt that would require her to keep 500 feet away from him and his residence. All communication between them would be conducted solely via AppClose, a phone app that does not allow messages to be deleted. They would keep their existing equal parenting time arrangement with their daughter and communicate with her via cell phone. The court told Whitten that if she agreed to this arrangement, no DVO hearing would be required. Whitten refused to stipulate to the agreement, and the court proceeded to conduct the hearing.

After Everitt testified about the episode in which Whitten threatened him, the court asked if he was fearful that, if the DVO was not entered, Whitten might act on those threats. He responded: "I'm fearful that if she's around me, if I at any time put my hands on her or do anything she would turn it around and I'd be in that chair and she'd be in this one." He said he was protecting himself and that she had falsely accused him of a few things of which he had proof. When the court asked, "But are you fearful of her?" he initially replied, "No" and then "Yeah."

The court then viewed a video recording of the incident on Everitt's phone. Whitten was holding their daughter and appeared very upset, angry and crying. She said to Everitt, "I will slit your throat, I will stab you one day, just wait."

The court then told Whitten she could cross-examine Everitt. Whitten asked him whether this was his first domestic violence hearing and asked the court whether she could present documentary evidence about the prior proceedings. The court told her to "hold on" and to question Everitt about the specific allegations made in the petition and his testimony. Whitten told the judge there was a history of Everitt provoking her and then using it against her. She said he broke in and attacked her on one occasion. She asked Everitt if he had any violent charge in his record and asked about charges for armed robbery and holding someone at gunpoint in Georgia, which he denied.

-4-

When she asked him about telling their daughter that her mommy would be living in a homeless shelter, he responded that Whitten had been teasing him and making fun of him, and that she "couldn't take what she dished out." She asked, "When I said I'd slit your throat you were scared?" He replied, "Absolutely." He testified that after he and their daughter left, they got something to eat and then drove around while he contemplated his next move. He testified: "I didn't want to go home because you were going to slit my throat. I was scared you were going to slit my throat in my sleep." He did eventually go home. According to Whitten, he was not really afraid because he left his bedroom door open. He testified that he stayed awake a lot to make sure she did not attack him. He also showed another video on his phone of Whitten throwing a punch at him, kicking at him, and threatening to say he tried to rape her.

The family court questioned Whitten, who acknowledged Everitt allowed her to stay at his house. She testified that he drinks and can be violent. She explained that she snapped after he called her names and told her he'd make her cry. When their daughter came home crying and saying Daddy told her she was going to a homeless shelter, she testified that her claws came out because he hurt their daughter so much.

The trial court made the following written findings:

[Everitt] and [Whitten] were previously in a dating relationship. They have lived together, dated for four (4)

years and have one (1) child in common. On November 11, 2025, the parties were residing together. A conversation occurred regarding [Whitten] having to vacate the residence. [Everitt] testified [Whitten] attacked him by punching and kicking him. [Everitt] testified that [Whitten] stated she would slit his throat and kill him in his sleep. [Everitt] also stated [Whitten] spit on him. [Everitt] produced two (2) videos that corroborated his testimony. [Everitt] testified he is fearful of [Whitten]. [Whitten] stated in the video, "I will stab you one day."

The trial court entered a DVO reflecting the terms it had outlined at the beginning of the hearing. Whitten was ordered to surrender her license to carry concealed firearms; not communicate with Everitt except through the AppClose app; remain at least 500 feet away from him at all times, his residence, and his workplace, except to exchange their child and at their child's extracurricular activities; and to vacate Everitt's residence. This appeal by Whitten followed.

## STANDARD OF REVIEW

When we review the grant of a DVO, the question "is not whether we would have decided the case differently, but rather whether the trial court's findings were clearly erroneous or an abuse of discretion." *Gibson v. Campbell-Marletta*, 503 S.W.3d 186, 190 (Ky. App. 2016). An abuse of discretion occurs if the trial court's ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## ANALYSIS

"Any family member or any member of an unmarried couple may file for and receive protection . . . from domestic violence and abuse[.]" Kentucky Revised Statute ("KRS") 403.750(1). "Following a hearing . . . if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]" KRS 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021) (citation omitted). "Domestic violence and abuse" are defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2)(a).

Whitten raises four arguments on appeal, which we have grouped into two categories; first, that the trial court deprived her of due process by not allowing her to introduce documentary evidence she contends was highly relevant to assessing whether Everitt had a legitimate fear of imminent physical injury; and second, that Everitt's testimony did not support a finding of fear of imminent

-7-

physical injury and that the trial court used the wrong standard in making this determination.

Whitten contends that the family court deprived her of due process by repeatedly denying her permission to submit documentary evidence. She claims she had numerous documents which showed that she was a victim of post-traumatic stress disorder and that her reaction to Everitt was a response to prolonged abuse; texts indicating that prior to the incident on November 11, 2025, she had locked herself in her room and that Everitt was yelling, hitting the door, and telling her he intended to make her cry; a written statement from an individual who was on the phone with her and heard these threats; written testimony from their daughter describing Everitt's history as the primary abuser and provoker; a letter from their daughter's former school that marijuana was planted on her by Everitt in retaliation for Whitten's filing a petition for a DVO; prior text messages from Everitt threatening to plant drugs on their daughter and take her away from Whitten; housing application records showing Whitten was trying to get her own home away from Everitt and that the parties had not been together for years; and police reports and prior DVOs, one from Florida and one from Kentucky, establishing a pattern of abuse by Everitt against Whitten.

We have carefully reviewed the video record, particularly the portions cited by Whitten, and do not see evidence that the family court improperly denied

her requests to submit this documentary evidence. Whitten states she requested permission to tender her evidence multiple times throughout the hearing, but the record does not support this claim. When Whitten began her cross-examination of Everitt, she asked to submit documents relating to DVOs allegedly entered against Everitt in other states. The court inquired about the relevance of these documents. Whitten explained that she wanted to show a history of Everitt's provoking her and recording her reactions, and that this behavior was used against him in prior proceedings. The family court told her to hold on and permitted Whitten to question Everitt concerning the alleged prior incidents of violence and an episode when he allegedly held someone at gunpoint in Georgia. Regarding the multiple other documents she lists in her brief, she never informed the court of their existence or contents, and consequently, the court was unable to rule on their admissibility. "The Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). Furthermore, the family court did permit Whitten to question Everitt about the prior incidents of violence. "[A]buse of discretion is the proper standard of review of a trial court's evidentiary rulings." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). The family court was fully aware that the parties had a lengthy history of conflict. Its decision not to introduce documentary evidence of prior episodes of violence and focus instead on

the testimony relating to the episode on November 11, 2025, was not an abuse of discretion.

Whitten contends that the court predetermined the case, and that this was evidenced by its statements at the beginning of the hearing describing the terms of the DVO if it was issued. But the court was simply outlining the terms of what Everitt had requested, and providing Whitten with the opportunity, if she chose, to agree to the terms and avoid the entry of a DVO.

Secondly, Whitten argues that Everitt's evidence did not meet the statutory standard for proving fear of imminent physical injury. She contends that his testimony was inconsistent and, rather than establishing fear of domestic violence, it merely reflected his apprehension about personal repercussions. Everitt initially answered "No" when the trial court asked if he was fearful of Whitten, and then "Yes." But when Whitten asked him if he was scared when she threatened to slit his throat, he replied, "Absolutely." He also testified that he was afraid to go home because he feared she would slit his throat while he slept. The video recordings on his phone corroborated his testimony about Whitten's threats. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "[A] reviewing court is not permitted to substitute its judgment for that of the family court, unless its findings are clearly erroneous. A factual finding is not

clearly erroneous if it is supported by substantial evidence." *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007) (internal quotation marks and citations omitted). The findings here are supported by substantial evidence in the form of Everitt's testimony and the video recordings of Whitten's threats.

Whitten claims that Kentucky courts have "repeatedly cautioned" that DVOs must not be issued as litigation tools or strategic shields. As legal authority for this claim, she cites to *Barnett v. Wiley*, 103 S.W.3d 17, 20 (Ky. 2003) and to *Robbins v. Meeker*, No. 2016-CA-000302-ME, 2017 WL 242671 (Ky. App. Jan. 20, 2017), an unpublished opinion for which she has provided a Westlaw citation that is incorrect. Neither *Barnett* nor *Robbins* stands for the principle she claims, and consequently, this argument will not be addressed here.

Whitten contends that the trial court committed reversible error by failing to apply the "reasonable person standard" in assessing whether Everitt's fear of injury was credible. She argues that the family court improperly relied on a video recording of a single verbal outburst during an emotionally charged argument and failed to consider the incident in a broader context. She contends that she made the statements about stabbing Everitt while she was under duress, holding her crying child, and responding to provocation by Everitt. She cites *Rankin v. Criswell*, 277 S.W.3d 621, 626 (Ky. App. 2008), for the proposition that "emotionally charged speech during domestic conflict – standing alone – does not

satisfy the domestic violence statute absent evidence of imminent action or likelihood of execution." We have carefully reviewed *Rankin* and have not found anything resembling this statement. In any event, the court did not rely solely on Whitten's emotional speech. Whitten threatened actual physical harm and accompanied her threats with punching, kicking, and spitting, as confirmed by the video recordings. Under the circumstances, the family court did not abuse its discretion in concluding that the preponderance of the evidence supported a finding that domestic violence and abuse had occurred and might occur again.

## **CONCLUSION**

For the foregoing reasons, the Daviess Family Court's entry of the DVO against Whitten is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FILED FOR APPELLEE.

Teresa Jewel Whitten, *pro se*
Owensboro, Kentucky